Good morning, your honors. How are you? Good, thank you. I'm Jason Saunders of Gordon and Saunders. I'm representing Sebastian Burns and I'd like to reserve two minutes, please. The only issue in this case is whether the trial court denied my client due process rights under the 5th and 14th amendments when he failed to suppress evidence of statements that were coerced and voluntarily given to Canadian police officers. We agree as parties that the seminal case that we're talking about is Fulminante. In Fulminante, the test for voluntariness is whether the defendant's will was overborne by such tactics that it shows that it was coerced. What's interesting about that Fulminante was a case where Fulminante was actually in jail for another matter and there is news and suspicion that he was actually guilty of brutally murdering his 11-year-old daughter. It was a former police officer, paid informant, who confronted him, posed as a mafia person, which is interesting, who said look we can actually offer protection so you won't get hurt in jail if you just come out and tell me what you did and then he confessed because he knew that the threat was real. He could be injured inside jail. Isn't the critical issue here whether Burns confessed in order to save himself from some type of violent act? I don't think that's the only test under Fulminante and what's actually the threat of being killed by the person presenting the conversation but rather that you could be protected from being killed if you just confess and that in my estimation is what this case is all about. What do we know about Fulminante in the sense of how much danger he might have been absent the protection? I mean there's certain sorts of crimes. If you go in, if you're convicted for example of child abuse and you go to prison you're in serious danger. I mean what do we know if anything about the Fulminante crime that would bear on this question? What's interesting is yes it's possible that someone could be hurt or even killed in jail but not everybody is. It's possible he could be not killed but injured. It's possible he might be disrespected or spit on. We have no record that any of those things were going to happen. He was in fear that he could be hurt and just the fear of being that he was in fear that he could be hurt was enough. So I think our case is very similar. Hazlitt when he says in the operation that they've got the fake memo and they said they're gonna lock your ass up and he also said in cross-examination you know if that happens we can't let it happen because you might want to confess or talk to the police about your participation with the mafia and that's gonna actually hurt the mafia so we're not gonna let that happen and he didn't raise a number of times some concern about violence but the the primary law enforcement officer who was dealing with him kept saying no that's not us we're just into making money and kind of constantly saying that over and over again. He was especially at the beginning but yes what's interesting about this scheme and plot and luckily America doesn't have it is it's very Machiavellian. It tries to get people through device and scheme to be ingratiated in the mafia and then do small things for the mafia be known more information about the mafia finally lead up to meet Mr. Big and then he has a lot on you and he's gonna do this trick of you have to tell us a lot they're coming to lock you up. This is something that has been used in 350 cases in Canada and it's well tried and tested it's extremely honed and the very purpose of it is to coerce a confession. Here's in a sense my problem with not only this case but with our own law. It's very clear that interrogating officers get to lie and to trick the person that they are interrogating. It's also clear that they cannot use threats of violence as we see in Fulminante. Well this what happened here in this interrogation I think it's in a hotel in Victoria where we finally get the confession. Yes. By AH. It's clearly a trick. Right. And well and American police are allowed to engage in all kinds of my view pretty bad trickery. That's true. Why is this more than trickery? Because it parallels exactly with Fulminante. So in that case there was the there wasn't a specific person coming after him. There wasn't an episode that was about to happen. There was no eminent physical threat of anything. It was just like this could happen and I can protect you from it because I'm the mafia boss and has it has the exact same thing. You don't have to prove that there's an actual threat of violence under Fulminante. There wasn't an actual threat of violence. And the threat here that he's being protected against seems to me mostly the threat of being prosecuted successfully. That is definitely something. But that's not the same as the threat of physical violence. No. But that's just a threat that justice may actually be pursued. I agree your honor. But there is definitely a record made that Hazlitt was trying to relay the information that he would not let him go to jail. And I cited it in the reply brief but let me just... Why would that coerce a confession from him? I mean they might have tried to get all sorts of stuff from him but why is confessing to the crime in the United States be the natural result of that? Of the possibility being killed in jail if he's there or which? Of any kind of violence against him where you say well in that case let me tell you you know let me confess to you about this crime. Why would that be the natural result of this threat? I mean either threat. The threat that he's going to prosecute it or the threat that he's going to suffer violence in jail if he gets arrested. Right. And once again I don't think you can read Full Monante to say there was an imminent actual physical harm. All that was necessary is that it was a possibility and he perceived it as a real possibility. So that is Full Monante in its decision is you know there doesn't have to be actual harm. There doesn't have to be a draw of blood. No, no. I understand that. What I was asking is why does whatever threats there would that result in a confession? Why would it result? Yeah. Well because it overbears the you know the record shows that Mr. Burns was quite resilient against pressures to confess. It did get to a point where the different inducements and different threats of possible harm if he went to jail and the fact that he thought Bellevue police were about to come up and lock his ass up was enough for him to say well even though I don't want to confess to you Hazlitt I think I have to because these things are about to come and impact me very negatively. That's all you need for Full Monante. You do not need I'm going to kill you tomorrow or and Hazlitt made it clear that it wasn't only that he would be in jail where he would be able to kill him but his tentacles were everywhere and he could actually kill him before he's even going because of fear that the mafia could be hurt in any way. But did he actually say that to him or is this just a generalized fear of dealing with a criminal organization? He admitted in cross-examination and and I'm looking at ER 559 through 560. He's asked in cross-examination, this is Hazlitt, he could be nervous whether he's guilty or innocent about being convicted of the crime, right? Sure, I don't know how he'd feel but sure. And whether he was guilty or innocent if he got nervous or afraid when he's sitting in jail he could use information about you to help himself, right? Sure. So at all costs he had to be kept out of jail both for your own protection as a crime boss and for his protection, right? And the answer is that's what I was relaying to him, yes. So the record is quite clear that that's exactly what he's doing. I mean this is this is not a situation where you have a simple police investigation interrogation. This is a device planned to build up the camaraderie between the two and support and loyalty and then to use this information to say you better come forth now. All these, I can give you a promise to be in the mafia. I can give you everything you need. I'll take care of the evidence but also we won't reach out and kill you. So it is fulminante and even more egregious than fulminante. Okay, you're almost out of time. I think I'll free serve but a few seconds I have. Thank you, Your Honor. May it please the Court, I'm Paul Weiser, Assistant Attorney General representing the appellee in this matter. We believe the District Court's decision should be affirmed. The District Court correctly held that the Washington Court of Appeals opinion in Burns's case was neither contrary to nor an unreasonable application of the relevant United States Supreme Court precedent, particularly fulminante versus Arizona. The State Trial Court thoroughly considered all of the evidence bearing on Burns's confession and the Court of Appeals in reviewing that decision by the trial court properly applied the the Fifth and Fourteenth Amendment standard from fulminante. And if there are any doubt about the voluntariness of Mr. Burns's confession, I think a review of the video confessions on July 18th and 19th of 1995 will lay to rest any concerns about voluntariness. Well, it depends what you mean by voluntary. I mean, he's not locked up, he's in a hotel room, takes a long time. On the other hand, the Mounties, a false story, is considerable. So, it depends on how you define coercion. It's correct, Your Honor. In the abstract, I understand that all of those pressures could have been on, could have overborne someone's will, but I think in this case we have a unique opportunity of seeing virtually, seeing or hearing virtually every interaction that Mr. Burns had with the law enforcement officers here. I think the audio that the RCMP took, both from electronic intercepts at Burns's home, his telephone, and in his car, as well as the the audio of the the other interactions that they had in in Canada, in addition to the the two videos or the three videos that were were taken, we have that evidence and I think based upon a review of that evidence, a reasonable court, and I believe the state superior court judge was a reasonable court, could conclude that this was a voluntary confession that Mr. Burns made, that he was, despite the the overtones of all these or these suggestions of all of the impending violence to him or these the bad fate that will befall him should he not confess, I think a court could reasonably conclude that he was not confessing in response to that type of pressure. You're reviewing the Court of Appeals, right? Not the Superior Court. I'm sorry, Your Honor. We're reviewing the Court of Appeals, not the Superior Court. You are, Your Honor, but the Court of Appeals, the reasonableness of the Court of Appeals decision, I think, depends a lot on on what was developed in the Superior Court and the the Superior Court's findings because that's what the Court of Appeals was reviewing and itself deferring to. So if I if I do refer to the state court ordinarily, I'm referring to the the Court of Appeals, but here, since so much of the record was developed in the Superior Court, that was my my reference to what was happening in the in the state court. But because Fulminante is the governing standard for this proceeding, I think it is important to look at what the facts were that the U.S. Supreme Court thought were so coercive and the Arizona Supreme Court found so coercive that Mr. Fulminante's will was overborne. And as the court has previously discussed, Fulminante was a suspected child murderer, and I believe that there was also a suspicion that he had molested the victim prior to killing her. And he was under threat of what the court called rough treatment. I think the Arizona Supreme Court termed it that he believed, reasonably or not, he believed that he was in jeopardy, that his life was in jeopardy, if he didn't get the protection from this this other inmate, Sara Bola. Well, and it's kind of common knowledge that someone charged or convicted of that sort of crime is in more danger in prison than the ordinary convict. We know that. That's correct, Your Honor. The one caveat here, Fulminante was merely suspected at that time. He had not been convicted of that crime, but the fear was that the rumor had reached the ears of all of the other inmates and that he would be subject to rough treatment, whatever that consisted of. But even with those facts... Don't you suppose that Mr. Burns might have feared the same thing, given what would be publicized about the murder? I mean, he killed three people with a baseball bat, a husband and wife and daughter, without apparently any provocation other than his friend wanting to inherit some money. Don't you think that might cause prison violence? I don't believe that that's the case, Your Honor. And I hate to call it an ordinary murder, but a murder in which the the victim is not a young child or especially a sexual molestation of a young child. But even under those facts, in the Fulminante case, the Supreme Court decided that the... or described the determination as being a close question. And I believe that in Mr. Burns' case, the the state court was entitled to conclude that the facts were in stark contrast and they were not, in fact, as counsel stated, eerily similar. Burns wasn't in prison and he wasn't in any kind of custody at all, unlike Mr. Fulminante. These meetings all took place in a relatively comfortable environment, either at the Four Seasons Hotel in or a couple of different hotels. I believe it was the Ocean Point and Royal Scott up in Victoria. Nice places. And it took some effort for Burns to get to these places, particularly the Victoria locations. That would have involved a couple hour ferry ride to the hotel. So this was not... he was not being tailed or followed by any of the RCMP. He had to go to them. And these meetings took place over the course of about three months and, in fact, some of them were separated by a few weeks of inactivity or no contact between the RCMP and the defendants. And it's interesting, throughout these meetings that I'm having with Mr. Burns, he encouraged Mr. Burns to continue to talk to his lawyer, the attorney who was representing him up in Vancouver. He did not state that he needed to be incommunicado. He did tell him don't talk to the cops. It's kind of ironic. Don't talk to the police. But he did encourage him to talk to his lawyer. So this was not a pressure cooker environment. And I show a very relaxed atmosphere. There's Burns sitting on the couch counting money at some point, cracking jokes and drinking beer. And then when he gets around to the description of the actual murders, he's almost giddy at a couple of points in his description. He's not shying away from any of the details of the crime. He described them very bluntly. But he was never threatened that he had to confess to Hazlitt. He was never placed in a position where he was subject to imminent physical harm or thought he would be subject to imminent physical harm. And Hazlitt never demanded that he confess. He just told Burns, you need to let me know what happened so that I can better destroy evidence. And that way, thwart any possible prosecution of you. And Burns, we know, had successfully dealt with intense questioning earlier. He had been questioned by the Bellevue police detectives and then later told the Bellevue police detectives, after he had gone to Vancouver, that he would not be talking to them any further. But Burns could have just walked away from Hazlitt at any time. It was his choice to stay in touch with Hazlitt because he wanted to go to work for him. The voluntariness issue may have been a close question in the Fulminante case, but it was clearly not a close one in Burns's case. The Court of Appeals relied heavily on Fulminante. First of all, they discussed at length the facts and holding of Fulminante. And then they went on to observe that the circumstances in Fulminante differ fundamentally from Burns's case and went on at some length to discuss what those differences were. We believe the Court of Appeals decision is entitled to deference under 28 U.S. Code, Section 2254D. The Court of Appeals clearly did not give the voluntariness issue short shrift or ignore any relevant details. We'd ask that the Court affirm the District Court's judgment of dismissal. Thank you. Thank you. We'll round it up to a minute. Thank you, Your Honor. Very quickly, the fact that Fulminante was in custody is a distinction without a difference. He was free to leave at any time. He wasn't being interrogated by police in an interrogation role. Sure, he could not leave the jail and drive away, but he was able to leave and wasn't being forced to sit with him at all. Also, Fulminante does not stand for the position that you need eminent harm. There was no eminent harm in Fulminante. There was the potential of some kind of harm, and it wasn't even eminent. It's just the possibility. Not everybody who goes to prison for a crime like Fulminante gets attacked and is threatened to be killed. And I also want to just point out that I think this case is especially important because Fulminante does describe the law. Our case fits in it. But if President comes out that says police can use these tactics, these are highly manipulative and coercive tactics that the Canadian Supreme Court has since said are presumptively inadmissible. And by ruling in favor of the government in this case, you would be changing and limiting Fulminante. And if the Court has no further questions, thank you. Thank you. Thank you. The case is now able to stand for a minute.
judges: Kozinski, W. Fletcher, Tunheim